959 P.2d 457

John M. and Joy E. RICHARDS, Plaintiffs–Appellants,

v.

IDAHO STATE TAX COMMISSION, Defendant–Respondent.

No. 23749.

Supreme Court of Idaho, Boise, December 1997 Term.

June 9, 1998.

Green Law Offices, Boise; and Lukins & Annis, Coeur d'Alene, for appellants. Michael M. Megaard argued.

Alan G. Lance, Attorney General; Charles E. Zalesky, Deputy Attorney General, Boise, for respondent. Charles E. Zalesky argued.

SCHROEDER, Justice.

This is an appeal by John and Joy Richards from the district court's grant of summary judgment in favor of the Idaho State Tax Commission (the Commission). After auditing the Richards' Idaho tax returns, the Commission issued two notices of deficiency. The Commission concluded that the interest income that the Richards received from a shareholder's loan made by them to Idaho Forest Industries (IFI) was Idaho source income that should have been included on their income tax returns for 1989 and 1990. The Richards appealed the Commission's findings to the district court. The district court granted summary judgment in favor of the Commission.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The Richards are residents of California and own a home in Hayden Lake, Idaho. During 1989 and 1990 they filed both California resident individual tax returns and Idaho non-resident tax returns. At the time, John Richards was a shareholder in IFI, which was, and is incorporated under the laws of the State of Idaho. IFI filed its federal income tax returns under subchapter S of the Internal Revenue Code. During 1989 and 1990 John Richards owned 29.9540% of the outstanding shares of IFI.

Mr. Richards loaned money to IFI. The proceeds of these loans became part of IFI's working capital and were used to finance the purchase of log inventories and to provide cash to carry the company's lumber inventories and customer accounts. In 1989 the Richards received $108,634 in interest income from the loans to IFI. In 1990 the Richards received $68,485 in interest income. None of this interest income was reported by the Richards as Idaho source income on their 1989 and 1990 Idaho non-resident income tax returns.

Following an audit of the Richards' 1989 and 1990 Idaho non-resident income tax returns, the Commission adjusted the tax returns to include all of the interest income received from the loans made to IFI. On petition for redetermination the Commission modified the amount of interest income reported as Idaho source income by multiplying the interest income by the applicable Idaho apportionment factor. IFI reported an Idaho apportionment figure of 87.1500% on its 1989 income tax return and an apportionment figure of 89.7159% on its 1990 income tax return. The Idaho apportionment figure represents the percentage of business activity conducted in Idaho. Thus, under the apportionment method, 87.1500% of the interest income received in 1989 was treated as income from an Idaho source, and 89.7159% of the interest income received in 1990 was treated as income from an Idaho source.

The Richards contend that they are not subject to the Idaho non-resident income tax because: (1) the interest income was not from an Idaho source, and (2) pursuant to section 63–3024 of the Idaho Code (I.C.) and Idaho Income Tax Regulation 27A.1, non-residents who do not have a business situs in Idaho are not required to pay income taxes on interest income derived from sources within Idaho.

## II.

## STANDARD OF REVIEW

On appeal from a summary judgment order this Court applies the same standard of review as that used by the district court when originally ruling on the motion. *Avila v. Wahlquist*, 126 Idaho 745, 747, 890 P.2d 331, 333 (1995); *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994). The Court must liberally construe the facts in the existing record in favor of the non-moving party and draw all reasonable inferences from the record in favor of the non-moving party. *Avila*, 126 Idaho at 747, 890 P.2d at 333; *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). Summary judgment is appropriate if " 'the pleadings, depositions, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *McCoy v. Lyons,* 120 Idaho 765, 769, 820 P.2d 360, 364 (1991) (quoting I.R.C.P. 56(c)). If there are conflicting inferences contained in the record or reasonable minds might reach different conclusions, summary judgment must be denied. *Bonz,* 119 Idaho at 541, 808 P.2d at 878.

### III.

### THE INTEREST INCOME DERIVED FROM A LOAN MADE BY THE RICHARDS TO A CORPORATION IN WHICH THEY ARE SHAREHOLDERS CONSTITUTES INCOME DERIVED FROM SOURCES WITHIN THE STATE OF IDAHO.

■ During the years at issue, I.C. § 63–3024 stated:

*A tax is hereby imposed* for each taxable year commencing on and after January 1, 1987, upon every resident individual, trust or estate which shall be measured by his or its taxable income, and *upon that part of the taxable income of any nonresident individual, trust or estate derived from sources within the state of Idaho....*

I.C. § 63–3024 (1988) (emphasis added). Under this code section a non-resident individual must pay income tax on income derived from Idaho sources. The Richards are non-resident individuals, but they contend that the interest income from IFI is not from an Idaho source. The question then is whether interest income derived from a loan made by the Richards to a corporation in which they are shareholders constitutes income derived from sources within this state.

■ During the years at issue in this dispute, the Idaho Income Tax Act did not define the term "sources." The Idaho Supreme Court has defined the term "source" to include dividend income received from a corporation to the extent that the corporation's business took place in Idaho. *Futura*

*Corp. v. State Tax Comm'n,* 92 Idaho 288, 442 P.2d 174 (1968). The Court stated:

[I]t is our opinion that the word "sources" when used in statutes dealing with sources of income derived from within this state—specifically, dividend income from a non-qualifying corporation—has reference not to the location of the entities issuing or receiving such dividend income, but rather to the location of the business activities wherein these earnings were derived.

*Id.* at 290, 442 P.2d at 176. The Court further agreed with the Missouri Supreme Court which held that " 'in the case of income derived from the use of capital, it is the place where the capital is employed.' " *Id.* (quoting *In Union Electric Co.'s Petition,* 349 Mo. 73, 161 S.W.2d 968, 970 (1942)). Therefore, the source of income from capital is the place where the capital is employed. The proceeds of the loan made by the Richards to IFI were used by the corporation as capital to finance its business operations. Applying the *Futura* definition of source of income from capital, the interest income received by the Richards in 1989 and 1990 was derived from an Idaho source to the extent that IFI used the capital in the state of Idaho.[1]

The Richards argue that the *Futura* definition of source does not apply to this case because *Futura* dealt with corporate income tax rather than non-resident individual income tax. However, *Futura* speaks more broadly, encompassing non-resident individuals also:

[I]t is our opinion that the word "sources" *when used in statutes dealing with sources of income derived from within this state—*specifically, dividend income from a non-qualifying corporation—has reference not to the location of the entities issuing or receiving such dividend income, but rather to the location of the business activities wherein these earnings were derived.

*Id.* (emphasis added).

There is further evidence that the *Futura* Court intended its definition to apply to non-resident individuals. The statutory language

---

1. IFI had an 87.1500% Idaho apportionment factor for the June 1989 fiscal year and an 87.7159% apportionment factor for the June 1990 fiscal year. Therefore, the Richards' interest income from IFI should be included in their Idaho tax returns to the extent that the income was derived in Idaho as determined by IFI's apportionment factors for the relevant years.

that the *Futura* Court interpreted applied to both corporations and non-resident persons. The statute at issue provided:

> 63–3027. COMPUTING TAXABLE INCOME OF NON-RESIDENT PERSONS AND ANY CORPORATIONS.—
>
> (a) *In computing the taxable income of* a <u>non-resident person</u> * * * with business situs in this state or any corporation with a business situs in this state * * *, income realized from or derived from sources within this state * *includes* . . . .

1961 Idaho Sess. Laws Ch. 328, p. 628 (emphasis added). Based on the foregoing, the interest income from IFI was Idaho source income.

## IV.

### DURING THE YEARS AT ISSUE, IDAHO HAD NOT ADOPTED THE COMMON LAW DOCTRINE OF *MOBILIA SEQUUNTUR PERSONAM.*

■ The Richards also argue that the interest income from IFI is not from an Idaho source because of the common law doctrine of *mobilia sequuntur personam.* Under this doctrine income from intangible property, including interest and dividends, ordinarily follows a person and has its taxable situs at the domicile of the owner. *Kopp v. Baird,* 79 Idaho 152, 313 P.2d 319 (1957). The Richards contend that *Kopp* supports its position that the *mobilia* doctrine was followed in Idaho during the years at issue. In *Kopp* the Court stated: "The doctrine of mobilia sequuntur personam generally applies, for purposes of taxation, to intangible personal property. Such personal property ordinarily follows the person and has its taxable situs at the domicile of the owner." *Id.* at 164, 313 P.2d at 326.

However, *Kopp* involved an excise tax levied from an oil and gas lease on property located in Wyoming. Based on the outcome of the case and the manner in which it was discussed, it is not clear whether the Court intended to adopt the *mobilia* doctrine.

While *Kopp* has never been expressly overruled, its reference to the *mobilia* doctrine has not survived subsequent case law and legislative enactments. *See TTX v. Ida-*

*ho State Tax Comm'n,* 128 Idaho 483, 485, 915 P.2d 713, 715 (1996); *Futura,* 92 Idaho at 288, 442 P.2d at 174. As discussed above, under *Futura,* the source of income from intangible property is not the domicile of the owner; instead, the source is the location of the business activities where the earnings were derived. *Futura,* 92 Idaho at 288, 442 P.2d at 174.

## V.

### THE RICHARDS HAD AN IDAHO BUSINESS SITUS.

■ The Richards contend that even if the interest income was Idaho source income, they should not be subject to an Idaho tax because they did not have an Idaho business situs. The Idaho Income Administrative Regulations in place during 1989 and 1990 impose a limitation on the ability of the State of Idaho to tax non-residents on their Idaho source interest income. The regulation provided:

> c. *Nonresident Individuals.* Income from Idaho sources includes, but is not limited to:
>
> . . . .
>
> ix. Income from interest or dividends arising from a source within Idaho, if at the time that such income is realized, the individual has an Idaho business situs. The mere receipt of interest or dividend income from an Idaho source is not sufficient by itself to create an Idaho business situs.

Idaho Income Tax Regulation 27A, 1.c.ix (1990). Thus, under the Commission's regulation, the Richards must have an Idaho business situs before their interest income is subject to an Idaho tax.

During the years at issue in this dispute, I.C. § 63–3023(a) defined a business situs as including, among other things, "being a stockholder of a corporation having income from Idaho sources having elected to file federal returns thereon pursuant to subchapter S of the Internal Revenue Code." I.C. § 63–3023(a) (1988). The Richards were shareholders in IFI, which is an Idaho corporation that earned income in Idaho and filed

federal tax returns pursuant to subchapter S of the Internal Revenue Code. Despite these facts, the Richards contend that they did not have an Idaho business situs because they received the interest income from IFI in their capacity as creditors, rather than shareholders. The Richards do not offer any authority to support their position that individuals do not have an Idaho business situs if they receive interest income from a loan that they made to a corporation in which they were a shareholder. Furthermore, the Idaho Income Tax Act does not make such an exception. According to the definition set forth in I.C. § 63–3023(a), a business situs exists if the non-resident individual is a shareholder of an Idaho S corporation. The Richards did have an Idaho business situs.

## VI.

### THE NEWLY ENACTED I.C. § 63–3026A DOES NOT CREATE AN AMBIGUITY IN THE IDAHO INCOME TAX ACT AS IT READ DURING 1989 AND 1990.

■ The Richards argue that the relevant statutes are ambiguous because recent legislation has created a new statutory definition of income from Idaho sources. During the years at issue in this case, the Idaho Income Tax Act did not define the term "sources." On January 1, 1996, the Idaho Legislature enacted I.C. § 63–3026A(3) which provides a definition of Idaho source income. Under section 63–3026A(3), interest and dividend income derived from capital employed in Idaho is, in most cases, no longer considered to be Idaho source income. Instead, as noted in the Commission's comments in the legislative proposal submitted to the Idaho Legislature, under this newly codified definition of income from Idaho sources, income from intangible property is normally sourced to the state of the owner's domicile.

Adoption of a new statutory definition of Idaho source income does not retroactively create an ambiguity in the law. Prior to the enactment of the new code section, the Idaho Supreme Court established the definition of Idaho source income in *Futura*. Therefore, any ambiguity in the term "source" was remedied by the Court when it specifically stated: "It is our opinion that the word 'sources' when used in statutes dealing with sources of income derived from within this state ... has reference not to the location of the entities issuing or receiving such dividend income, but rather to the location of the business activities wherein these earnings were derived." *Futura*, 92 Idaho at 290, 442 P.2d at 176. The fact that the Idaho Legislature enacted a statutory definition of "sources" twenty-eight years after *Futura* was decided does not create an ambiguity in the Idaho law as it existed in 1989 and 1990.

## VII.

### CONCLUSION

The district court's decision granting summary judgment to the Commission is affirmed. Costs are awarded to the Commission; no attorney fees are awarded.

SILAK and WALTERS, JJ., concur.

JOHNSON, Justice, dissenting.

I respectfully dissent. In my view, the Court's opinion incorrectly applies *Futura* and should have applied *Kopp*.

*Futura* does not dictate that the interest income the Richards received from IFI was income derived from sources within Idaho. *Futura* dealt with dividend income received by one corporation from another corporation. Dividends are the result of earnings of a corporation. *Futura* says this when it states that " 'sources' when used in statutes dealing with ... dividend income from the non-qualifying corporation—has reference ... to the location of the business activities wherein *these earnings* were derived." 92 Idaho at 290, 442 P.2d at 176 (emphasis added). When dividends are concerned, the location of the business activities where the earnings represented by the dividends were derived is the appropriate means to determine source. That is the holding of *Futura*. In the present case, the origin of the funds by which IFI paid interest to the Richards does not determine the "source" of the payment. The Court's logic in the present case would make the result depend on whether the corporation had earnings, or whether the interest was

paid out of other funds the corporation borrowed or from other funds resulting from the sale of assets at a loss.

In *Kopp*, the Court said:

> The doctrine of mobilia sequuntur personam generally applies, for purposes of taxation, to intangible personal property. Such personal property ordinarily follows the person and has its taxable situs at the domicile of the owner. Only when such personal property has acquired a "business situs" foreign to the owner's domicile, by becoming an integral part of a business of the owner there carried on, does it assume a taxable situs in the foreign jurisdiction.

79 Idaho at 164, 313 P.2d at 326 (citations omitted). The fact that the Court in *Kopp* did adopt the *mobilia sequuntur personam* doctrine is verified by the decision of the Court in *John Hancock Mutual Life Insurance Co. v. Neill,* 79 Idaho 385, 319 P.2d 195 (1957), issued less than six months following *Kopp.* Justices Smith, Taylor, and McQuade, who formed the majority in *Kopp,* were also in the majority in *John Hancock,* where the Court said: "Kopp v. Baird ... involved an excise tax levied upon income of an individual, not a corporate franchise tax. For that reason we held the doctrine [of *mobilia sequuntur personam* ] applicable in the Kopp case." *John Hancock,* 79 Idaho at 404, 319 P.2d at 205.

In my view, *TTX* does not undermine the ruling in *Kopp* applying *mobilia sequuntur personam.* *TTX* focused on the "business situs" aspect of *Kopp,* not *mobilia sequuntur personam.*

TROUT, C.J., concurs.